UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT

_M. A. Hill_
SO. DIST. OF GA.

| | | |
|---|---|---|
| TERESA M. MARLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV 405-227 |
| | ) | |
| MACY'S SOUTH, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Macy's Motion to Compel Arbitration and Dismiss Proceedings (Doc. 13). Pursuant to 9 U.S.C § 4, this Court hereby Orders the Plaintiff Marley to arbitrate her claims against Defendant Macy's.[1]

## I. BACKGROUND

On June 5, 2006, Plaintiff, proceeding pro se, filed a complaint alleging in this Court alleging that the Defendants discriminated against her because of her race in violation of Title VII.[2] (Doc. 6.) All of the allegations of discrimination arise out of Plaintiff's employment with Defendant from November 1999 through April 2005. At Macy's, Plaintiff was a human resource administrator responsible for payroll, training, book keeping, and various other administrative and

---

[1]Macy's South is an unincorporated division of Federated Retail Holdings, Inc.

[2]Ms. Marley is an African-American female.

retail related duties.

Plaintiff sets forth two instances of discrimination by Defendant. First, Plaintiff was discharged from Macy's because she was taking excessive time off during her lunch breaks. Plaintiff contends that for three hours she was held by Macy's security where she was questioned about her whereabouts during her recent lunch breaks. While detained by security, Plaintiff claims she was "coerced into writing a statement" that she was "stealing" time from the company. (Doc. 6, p. 4-5.) Ms. Marley contends that it was common practice for her and her co-workers to take longer lunches when they combined work errands with their lunch hour, but only she was singled out for her conduct because of her race.

Second, Plaintiff claims that because of her race she was required to work the retail floor in addition to her normal human resource position. According to the complaint, Plaintiff was expected to manage the same workload despite her new retail responsibilities. In sum, Ms. Marley claims that she was wrongfully discharged because of her race and seeks $80,000 in damages for her loss in pay and benefits.

At this juncture of the litigation, the issue before the Court is solely whether Plaintiff Marley is compelled to arbitrate her statutory claims against Defendant Macy's. Effective January 1, 2004, Defendant instituted an arbitration process through its Solutions InStore Program for all employees. The arbitration agreement applies to all employees except those who elected not to participate.

In August of 2003, Macy's held small group information sessions about its Solutions

InStore Program and followed-up by mailing a summary of the plan to all employees. In this mailing, employees had an opportunity to be excluded from the arbitration program by completing and mailing an election form provided in the mailing. Employees who opted-out of the arbitration program would receive written confirmation that Macy's had received their form. In September 2004, this opt-out election form was sent again to all employees who had not opted out after the 2003 mailing. According to Macy's records Ms. Marley did not complete this election form in either instance of the mailing, therefore, Ms. Marley agreed to participate in the arbitration process.[3] (Doc. 13, Exhibit A: Declaration of Lisa Gick, para. 8, 14.)

## II. ANALYSIS

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.,* was originally enacted in 1925, 43 Stat. 883, and then reenacted and codified in 1947 as Title 9 of the United States Code. The FAA's purpose was to reverse the longstanding judicial hostility towards arbitration agreements. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). The FAA provides that "[a] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also provides that federal district courts may order a stay in proceedings when an

---

[3]Defendant correctly states that a written arbitration agreement meets the FAA's writing requirement even if the arbitration agreement is not signed by the parties. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368-69 (11th Cir. 2005).

issue in the proceeding is referable to arbitration, and the FAA grants the federal district court the power to compel arbitration when one party refuses to comply with an arbitration agreement. 9 U.S.C. §§ 3, 4.

Both common-law and statutory claims, including discrimination claims, may be the subject of an arbitration agreement. See Gilmer, 500 U.S. at 26 (explaining that "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA"); see also, Caley, 428 F.3d at 1367-68 (stating that "compulsory arbitration agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate . . .rights under various federal statutes, including employment-discrimination statutes"). While a plaintiff may be required to adjudicate her statutory claims through the arbitration process, the plaintiff "does not forgo the substantive rights afforded by the statute; it only submits their resolution in an arbitral, rather than a judicial, forum." Gilmer, 500 U.S. at 26 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)).

Pursuant to the language in the FAA, arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, we look to state law to determine whether an agreement to arbitrate exists. See Caley, 428 F.3d at 1369 (explaining that to determine if a binding agreement arose between the parties, courts apply the contract law of the state that governs the formation of the contract; however, courts apply state law in light of the fact that federal policy favors arbitration). Ms. Marley contends that the arbitration agreement is not enforceable because she was coerced into agreeing to participate in the

arbitration process. Ms. Marley was in fear of losing her job at Macy's if she did not participate in the arbitration program.[4]

The arbitration agreement at issue provides that "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment shall be settled exclusively by final and binding arbitration administered by the American Arbitration Association ('AAA') . . . before a neutral, third-party Arbitrator. . ." (Doc. 13, Exhibit B, at p. 5.) Ms. Marley does not deny that she agreed to participate in the arbitration program despite the fact that she was given the opportunity to opt-out of the program on two occasions. Instead, Ms. Marley contends that the arbitration agreement is procedurally unconscionable, and therefore, unenforceable. See Caley, 428 F.3d at 1369 (stating that "[u]nder Georgia law, procedural unconscionability addresses the process of making the contract").

Under Georgia law, in determining whether a contract is procedurally unconscionable, Georgia courts look to the following factors: "age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness of and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of meaningful choice." NEC Techs., Inc. V. Nelson, 267 Ga. 390, 478 S.E.2d 769, 771 (1996). This Court finds the arbitration agreement was not procedurally unconscionable. Ms.

---

[4] Ms. Marley claims she was hesitant in signing the paperwork because she was not in agreement with the arbitration process. When Ms. Marley expressed her concerns with signing an agreement to arbitrate claims, she contends that she was urged to sign the paperwork and was told "that if [she] did not sign this paperwork, [she] would be in jeopardy of losing [her] job." (Doc. 17.)

Marley was a seasoned employee in the human resources department with over five years of experience. Thus, Ms. Marley has the age, education, intelligence, and business acumen to enter into the arbitration agreement. Ms. Marley also admitted that she was familiar with the arbitration process as she "witnessed at least two Macy's employees try to go through the arbitration process." (Doc. 17.) Therefore, Ms. Marley understood the arbitration process by witnessing others go through it. Despite her reluctance to enter the arbitration agreement, Ms. Marley agreed to the arbitration process. See Kramer v. Koger Co., 243 Ga. App. 883, 534 S.E.2d 446, 450 (2000) (holding that "one may not void a contract on grounds of duress merely because she entered into it with reluctance, the contract is very disadvantageous to her, the bargaining power of the parties was unequal or there was some unfairness in the negotiations preceding the agreements.")

While Ms. Marley states that she did not have a choice to enter the arbitration process because she was "in jeopardy of losing [her] job" if she did not, the record indicates that each employee was mailed an election form to opt- out of the program at their home address. According to Scott Pulice, Senior Manager of Federated Department Stores, Inc.'s Office of Solutions InStore, the process by which an employee could opt out was "confidential" and simply required an employee to mail-in the election form to the Ohio office. (Doc. 18, Exhibit A, para. 5 & 6.) Furthermore, Macy's InStore Solutions Program was *not mandatory*, but rather Macy's gave each employee the choice to participate in the arbitration process. (Doc. 14, Exhibit A, tab 1 & 4.)

Under these circumstances, Ms. Marley has failed to show that the arbitration agreement and its making was unconscionable. Therefore, this Court **GRANTS** Defendant's Motion to Compel

Arbitration and Orders that the proceedings be **STAYED**. The Court directs the clerk to administratively close the proceedings pending arbitration pursuant to the agreement between the parties and the provisions of the FAA.

**SO ORDERED.**

*John F. Nangle*

_____
**JOHN F. NANGLE**
**UNITED STATES DISTRICT JUDGE**

**Date: June _15_, 2007**